1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TABATHA MILLER,

    Plaintiff,

    v.

WALMART INC., et al.,

    Defendants.

Case No. 22-cv-03878-RS

**ORDER GRANTING MOTION TO REMAND**

## I. INTRODUCTION

Plaintiff Tabitha Miller brings the instant suit against her former employer Walmart Associates, Inc. and Walmart, Inc. (together, "Walmart"), as well as Walmart employee Emmy Rodriguez, a Front End Lead Manager and/or People Lead for Walmart, and unnamed DOES 1 through 50. Plaintiff first filed her suit in the Superior Court of the County of Contra Costa, alleging various causes of action, including claims of harassment in violation of the Fair Employment and Housing Act (FEHA) and intentional infliction of emotional distress, but Defendants removed the action to federal court on the basis of federal diversity. Plaintiff now brings a motion to remand to state court. Defendants oppose on the grounds that Defendant Rodriguez is a sham defendant and therefore her citizenship does not defeat diversity. As discussed below, because it is *possible* for Plaintiff to state a claim against Defendant Rodriguez, the motion to remand is granted.

United States District Court
Northern District of California

## II. BACKGROUND[1]

Plaintiff began her employment with Walmart in Contra Costa County in December 2018. Beginning in 2020, Plaintiff suffered a number of grievances. In February 2020, Plaintiff learned she was pregnant with a high-risk pregnancy, and informed her employer to seek accommodations. These requests were refused, and she was "mock[ed] and harass[ed] . . . for sitting down." Dkt. No. 16, Ex. 1 ("Compl.") at ¶ 10. A month later, Plaintiff faced complications requiring surgery and suffered a miscarriage, after which she took a leave of absence. Upon her return, Plaintiff suffered "intensified" harassment from her supervisors and others, and began suffering from depression and anxiety due to "ongoing mistreatment at work." Compl. at ¶ 12-13.

Against this backdrop, Plaintiff described difficulties she faced during the two instances she quarantined after being exposed to COVID-19. The first time, the leave administrator changed Plaintiff's entries in the leave portal, thereby "complicating" her leave. Compl. at ¶ 14. The second time, Plaintiff was wrongfully terminated—and reinstated only after she disputed the termination. Plaintiff also claims she was not hired for two management positions for which she was qualified: in November 2019, she was told that "because [she] is a woman, she was not strong enough to do the job" of Garden Manager, and she was not hired for Lead Home Lines Manager in May 2020 "in retaliation for having complained about discrimination and retaliation." Compl. at ¶ 16.

Plaintiff filed at least two formal complaints with Walmart's Ethics Department, complained to the Store Manager, and submitted a Charge of Discrimination with the EEOC, all without resolution. Instead, Plaintiff faced retaliation as a result, including micromanaging; exclusion from breaks; comments about taking rest breaks and/or sitting down; refusals for reasonable accommodation; denial of promotions; being stalked during rest breaks; and others "messing with" Plaintiff's leave paperwork. Compl. at ¶ 18.

Due to her resulting anxiety and depression, Plaintiff took an approved leave of absence

---

[1] The factual background is based on the well-pled allegations in the complaint, which we take as true for the purposes of this motion.

from approximately January 2021 to May 2021, during which time she was again terminated and only reinstated after contesting the termination.

Plaintiff avers that the discrimination, harassment, retaliation, and mistreatment from the company and supervisors have continued. For this and a number of other violations, Plaintiff filed suit in the Superior Court of the County of Contra Costa. Among her 23 causes of action, only two under the present language of the complaint implicate Defendant Rodriguez: pregnancy disability harassment and intentional infliction of emotional distress.

### III. LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed to federal district court. 28 U.S.C. § 1441(a). However, there is a "strong presumption against removal jurisdiction," and thus "the defendant always has the burden of establishing that removal is proper." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). Furthermore, this presumption against removal requires that "the court resolve[] all ambiguity in favor of remand to state court." *Id.*

To remove an action on the basis of diversity jurisdiction, a defendant must demonstrate complete diversity of citizenship amongst the parties. 28 U.S.C §§ 1332(a), 1441(b). Where it is not the case that "each of the plaintiffs [is] a citizen of a different state than each of the defendants," *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (citations omitted), diversity jurisdiction does not attach. Yet this rule brooks an exception: "where a non-diverse defendant has been 'fraudulently joined,'" that defendant's presence does not extinguish diversity jurisdiction. *Id.*

In the Ninth Circuit, "[t]here are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter*, 582 F.3d. at 1044). To satisfy the latter method, the defendant must show with "clear and convincing evidence," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), that it is "obvious according to the settled rules

of the state" that the plaintiff cannot state a claim against them. *Hunter*, 582 F.3d at 1046. In other words, "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Grancare*, 889 F.3d at 548 (citing *Hunter*, 582 F.3d at 1046). This presents a standard more exacting than the Rule 12(b)(6) dismissal for failure to state a claim, as the district court "must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* at 550. Only those claims for which any amendment would be futile will meet the deficiency standard required to find a joinder fraudulent.

## IV. DISCUSSION

In her motion to remand, Plaintiff identifies six allegations concerning Defendant Rodriguez's conduct. including: (1) nefariously changing Plaintiff's leave requests in the third-party administrator portal, thereby "complicating" Plaintiff's leave (Compl. at ¶ 14); (2) micromanaging Plaintiff, excluding Plaintiff from rest breaks, stalking Plaintiff during breaks, and making inappropriate comments about her taking breaks (Compl. at ¶ 19); (3) "messing with" Plaintiff's scheduling in retaliation for being named in Plaintiff's complaints about harassment (Compl. at ¶¶ 21-22); (4) repeatedly attempting to get rid of Plaintiff by improperly altering her schedule (Compl. at ¶ 22); (5) harassing Plaintiff due to her sex and pregnancy (Compl. at ¶ 40); and (6) acting in an extreme and outrageous fashion (Compl. at ¶ 126).

Defendants correctly note that several of these referenced paragraphs, as written in the complaint, do not specifically reference Defendant Rodriguez. Paragraph 14 pleads that "*management* would nefariously change Plaintiff's entries," and Paragraph 19 details that Plaintiff "experienced" the offensive behavior, without identifying the actors responsible. Only Paragraphs 21 and 22, alleging that Plaintiff was wrongfully removed from the work schedule for two weeks on or about May 2, 2022, are specifically made with respect to Defendant Rodriguez. This was retaliation by Defendant Rodriguez for being included in Plaintiff's "complaints about ongoing harassment, discrimination, retaliation, depression, anxiety, and stress," a belief which was "based on Defendant Rodriguez repeatedly attempting to get rid of Plaintiff and improperly altering

Plaintiff's schedule." Compl. at ¶¶ 21-22. Plaintiff's claims for disability pregnancy harassment and IIED are evaluated with these allegations in mind.[2]

### A. FEHA Disability Harassment

Under the FEHA, it is unlawful for an employee to be harassed by either an employer or a fellow employee because of physical disability, age, or gender. Cal. Gov't Code § 12940(j). Harassment "refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009). It "consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th. 55, 63 (1996). While "commonly necessary personnel management actions, such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations . . . do not come within the meaning of harassment," *Reno v. Baird*, 18 Cal. 4th 640, 646–47 (1998) (citations omitted), the California Supreme Court has made clear that "some official employment actions" can form the basis for a harassment cause of action, because they "can also have a secondary effect of communicating a hostile message." *Roby*, 47 Cal. 4th at 709. In order to be actionable, such harassing actions must be sufficiently "severe or pervasive as to alter the working conditions" and create a hostile environment. *Id.* at 708 (citations omitted).

As pled, the specific allegations against Defendant Rodriguez, which largely concern changes made to Plaintiff's work schedule, do not evince conduct so "severe or pervasive as to alter [Plaintiff's] working conditions." Even if Defendant Rodriguez's actions were retaliatory, it is also unclear that any purported harassment was directly based on Plaintiff's pregnancy. Plaintiff

---

[2] Paragraphs 40 and 126 are conclusory and devoid of specific allegations with respect to Defendant Rodriguez's conduct, and therefore not discussed further.

Plaintiff suggests that she "clarified that references to management sometimes referred to Defendant Rodriguez" in her motion to remand. Dkt. No. 18 at 5. While this supports the idea that Plaintiff may be able to cure by amending her complaint, Plaintiff's claims will be evaluated in light of the facts in her well-pled complaint.

1    does not presently state a claim for harassment.[3] Nonetheless, Defendants have not met their

2    burden of proving that Plaintiff *could not possibly* do so, if given leave to amend.

3        Defendants argue that Plaintiff's submission of a verified complaint amounts to a tacit

4    admission that Plaintiff has no additional facts, and thereby precludes Plaintiff from adding to the

5    complaint. Dkt. No. 17 at 10. This does not pass muster in light of the liberal amendment policy

6    under both federal and state procedural law. Defendants' appeal to *Hendy v. Losse* to argue the

7    contrary, moreover, is misplaced. *Hendy* cautions that "[w]here a verified complaint contains

8    allegations destructive of a cause of action, the defect cannot be cured in subsequently filed

9    pleadings by simply omitting such allegations *without explanation*." 54 Cal. 3d 723, 742 (1991)

10    (citations omitted) (emphasis added). Plaintiff's amendment in *Hendy* was denied because it

11    would have been contradictory to an earlier-pled fact (alleging that the defendant was an

12    independent contractor, not an employee, as originally claimed in the complaint), but Plaintiff "did

13    not suggest to the trial court that a factual basis existed for amendment of the complaint . . . and he

14    has not demonstrated to this court either that the allegation that [defendant] was an employee was

15    the result of inadvertence or mistake, or that he has since discovered a factual basis for alleging

16    that [defendant] was an independent contractor." *Id.* at 743. By contrast, an amendment adding

17    details about Defendant Rodriguez's conduct would neither omit already-pled facts nor introduce

18    facts that necessarily conflict with what Plaintiff originally verified in her complaint.

19        Because Plaintiff may amend her complaint, it is presently impossible to determine that the

20    allegations against Defendant Rodriguez cannot, as a matter of law, establish a cause of action for

21    harassment in violation of FEHA. The California Legislature has proclaimed that "a single

22    incident of harassing conduct is sufficient to create a triable issue regarding the existence of a

23    hostile work environment," provided that such conduct "has unreasonably interfered with the

24    plaintiff's work performance or created an intimidating, hostile, or offensive working

25    

26    _____

    [3] Plaintiff's inapposite citation to *Silverman v. Wells Fargo Ins. Servs. USA, Inc.*, 20 F. Supp. 3d

27    1357 (S.D. Fla. 2014), an out-of-district case analyzing tortious interference with an advantageous
    business relationship under Florida law, likewise does not further her case.

28    

United States District Court
Northern District of California

environment." Cal. Gov't Code § 12923. Plaintiff's complaint includes broad allegations of inappropriate comments about rest breaks and stalking, which present the possibility of allegations supportive of pregnancy-related harassment. The allegations that Defendant Rodriguez took retaliatory action for being included in "complaints about *ongoing* harassment, discrimination, retaliation, depression, anxiety, and stress," and that Defendant Rodriguez "*repeatedly* attempt[ed] to get rid of Plaintiff," moreover, suggest the possibility that conduct was continued, rather than isolated. Compl. at ¶¶ 20, 22. While Defendants' caselaw citations are helpful markers for the kind of conduct that falls short of the required threshold for harassment, they do not present a bar to the potential allegations Plaintiff *may* make in the future.

**B. Intentional Infliction of Emotional Distress (IIED)**

To prevail on her claim for IIED, Plaintiff must show: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017). Critically, to qualify as "outrageous," the conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citations omitted).

Defendants claim Plaintiff cannot possibly sustain her IIED claim because personnel decisions can never constitute the requisite outrageous conduct for IIED liability, and IIED claims are entirely barred by workers' compensation exclusivity. Dkt. No. 17 at 5. They are mistaken. The California Court of Appeal has explained that plaintiffs may pursue their claims "where the conduct at issue violates FEHA and also satisfies the elements of the [IIED] claim," because such "unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain," and therefore outside the ambit of "worker's compensation exclusivity. " *Light*, 14 Cal. App. 5th at 101. Whereas courts will dismiss allegations amounting to a plaintiff's simple discontent with personnel decisions, *see Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984) (Plaintiff's claim was "no more than a claim that [he] was fired without good

cause and that as a result he suffered emotional distress"), claims where the distress arises from offensive conduct *outside* the normal course of employment or the employer's role will not be barred, as such conduct does not "stem[] from a risk reasonably encompassed within the compensation bargain." *Light*, 14 Cal. App. 5th at 97-98 (collecting cases concluding that "claims for [IIED] in the employment context may be asserted where the actionable conduct also forms the basis for a FEHA violation").

Here, Plaintiff claims she suffered IIED based on retaliation and harassment related to her "sex, pregnancy, and disability." Dkt. No. 16 at 8. Cases where courts have declined to find IIED for personnel decisions like pretextual termination or work-related criticism are therefore inapposite. *See* Dkt. No. 17 at 8-9. Indeed, this court has previously declined to find fraudulent joinder in similar situations. *See, e.g.*, *Tuens v. U.S. Bank Nat'l Ass'n*, 2020 WL 5893406, at *5 (N.D. Cal. Oct. 5, 2020) (issuing order to show cause why joinder was not proper, and later remanding[4], where Plaintiff complained of a "pattern of hostile conduct" by employer that "culminated in [Plaintiff's] termination," including issuance of an action plan for unsatisfactory performance and denying credit for business opportunities developed); *Browand v. Ericsson Inc.*, 2018 WL 3646445, at *8 (N.D. Cal. Aug. 1, 2018) (finding IIED claim survived where Plaintiff alleged differential treatment of women, such as refusing to offer additional training, lying about why Plaintiff would not be receiving a raise, and focusing on career opportunities for male employees not provided to female employees like Plaintiff).

As Plaintiff's complaint does not clearly specify which specific actions comprised the alleged harassment, it fails to demonstrate the outrageousness necessary for IIED liability. Nevertheless, "vagueness is not necessarily enough to merit a finding of fraudulent joinder." *Browand*, 2018 WL 3646445, at *8. As explained above, Plaintiff's references to conduct such as ongoing harassment and stalking prevent the conclusion that it is *impossible* for Plaintiff to state a

---

[4] Order Remanding Case, *Tuens v. U.S. Bank Nat'l Ass'n*, No. 20-cv-03459, ECF No. 31 (N.D. Cal. Nov. 9, 2020).

ORDER GRANTING REMAND
CASE NO. 22-cv-03878-RS

claim for IIED, should she amend to provide additional facts that rise to outrageous behavior. Dkt. No. 16 at 8; *see also Reyes v. Marshalls of CA, LLC*, 2022 WL 2753520, at *4 (C.D. Cal. July 14, 2022). Ultimately, "[Plaintiff] has not stated claims for FEHA harassment against [Defendant] but . . . it is possible that she could. Thus, it is also possible that [Plaintiff] could state a claim for IIED against [Defendant]." *Tuens*, 2020 WL 5893406, at *7.

**V. CONCLUSION**

While Plaintiff's present allegations may not amount to actionable claims for harassment and IIED, the fact that she could theoretically present viable claims if she were given leave to amend renders remand appropriate. Accordingly, the motion to remand is granted.

**IT IS SO ORDERED**.

Dated: September 16, 2022

_____
RICHARD SEEBORG
Chief United States District Judge